IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN MICHAEL CUMMINS,

    Plaintiff,

v.                                                    Civil Action No. 3:21CV556

ALISON LAND, *et al.*,

    Defendants.

## MEMORANDUM OPINION

John Michael Cummins, proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.  Cummins is currently civilly committed in the Virginia Center for Behavioral Rehabilitation ("VCBR") because he was found to be a sexually violent predator ("SVP").  The matter is before the Court on the Motion for Summary Judgment filed by Defendants and the Court's screening obligations under 28 U.S.C. § 1915.  Cummins did not respond to the Motion for Summary Judgment.  The Motion for Summary Judgment will be DENIED in part and GRANTED in part.

## I.    PROCEDURAL HISTORY AND ALLEGATIONS

### A.    The Complaint

Cummins's claims flow from his confinement and adjudication as a sexually violent predator pursuant to section 37.2–900 of the Virginia Code, the Sexually Violent Predator Act ("SVPA").  Cummins's Complaint is extremely lengthy and is comprised primarily of his musings about the unfairness of Virginia's commitment and detention of SVPs.  Simply put, the Complaint does not succinctly state how the named Defendants violated Cummins's federal or constitutional rights, and this complicates the Court's review of the matter.  Cummins names the following

individuals as Defendants: Alison Land, the former Commissioner of the Virginia Department of

Behavioral Health and Developmental Services; Jason Wilson, the VCBR Facility Director; and,

Anita Schlank, the VCBR Clinical Director ("Defendants").  (ECF No. 1, at 1; ECF No. 1–1, at

57–58.)[1]

### 1.    What Are Cummins's Claims?

Because of the length and meandering nature of his allegations, it is difficult to ascertain

the parameters of Cummins's constitutional claims.  In his attachment labeled as "Statement of

Claim," Cummins represents that he has "two Constitutional civil rights violations" (ECF No. 1–

1, at 2) and two claims for relief:

> Claim One:  "The Virginia statute that regulates the classification, involuntary civil commitment, and release of sexually violent predators (Va. Code 37.2–900) is unconstitutionally vague with no clear standard/criteria set for the classification, involuntary commitment, and/or release of SVPs, nor is the burden of proof placed on the Commonwealth clear and/or specific enough." (*Id.* at 3.)

> Claim Two:  "[T]he conditions at the Virginia Center for Behavioral Rehabilitation, the facility that SVPs are confined to, as well as its treatment program and operating procedures, are unconstitutionally restrictive and amount to a punitive environment amounting to punishment of the residents." (*Id.*)

In his statement of his claims, Cummins does not identify under which constitutional amendment

he brings his claims.  Nevertheless, in the body of his Complaint, Cummins cites cases referencing

the Due Process Clause for Claim One.  (*Id.* at 16–18.)  The Court, therefore, believes that

Cummins intends to argue that the SVPA violates due process.  Within Claim One, Cummins also

contends that he was improperly found to be an SVP, a distinct basis for relief.  (*Id.* at 9–13.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.  The Court corrects the spacing, capitalization, and punctuation in the quotations from Cummins's submissions.

Claim Two is not so clear and because of this, the Court has difficulty identifying Cummins's claims for relief. According to Cummins, Claim Two provides a "general overview of the conditions of VCBR and why they are unconstitutional, overly restrictive, and punitive." (*Id.* at 19.) Cummins's complaint proceeds by challenging various aspects of his treatment plan that he finds arbitrary, oppressive, or unfair. Cummins then argues that certain institutional rules are unfair and "hinder[]" residents "in the treatment program and in being released for things that are not sexually violent." (*Id.* at 51.) For example, Cummins complains about the restrictions on borrowing, lending, and trading items, (*id.* at 44), restrictions on possessing contraband, (*id.* at 45–46), restrictions on lying to staff and failing to follow staff directives, (*id.* at 47), and restrictions on sexual behavior, (*id.*), and contends that the privilege system is unfair, (*id.* at 47–51). Cummins next complains that housing inmates who break rules in a special housing unit is unfair, (*id.* at 51), that there are minimal recreational services offered, (*id.* at 52–53), his mail is searched and restrictions exist on what he may send or receive, (*id.* at 54–55), he is only allowed to purchase items from an approved vendor list, (*id.* at 54–56), and that the VCBR requires some inmates to have roommates, (*id.* at 58–60). Cummins speaks in hypotheticals and purportedly on behalf of many detainees but provides few examples of how these rules or policies have violated *his* constitutional rights. Cummins then summarizes Claim Two as violating "residents' constitutionally protected rights to be free from bodily restraint/freedom of movement, freedom of association, freedom of expression, and the right to secure and dispose of property is being taken from residents by the defense for no legitimate state interest and/or as an exaggerated response to potential issues." (*Id.* at 56.)

Second, within Claim Two, Cummins also argues that the treatment program at the VCBR "conflicts with the VA SVPA." (*Id.* at 20.)

3

Notably, in the first fifty-six pages of his "Statement of Claim," Cummins fails to mention the named Defendants.  On page fifty-seven, Cummins has a section entitled, "Defendants' Direct Involvement." (*Id.* at 57.) Cummins indicates that:

> Ms. Alison Land, the Virginia Department of Behavioral Health and Developmental Services Commissioner, is the individual who each VCBR resident is committed into the custody of.  She is directly responsible, per Va. Code 37.2–900, for my and every other VCBR resident's continued confinement and commitment.  Furthermore, she is the individual who has granted "exemptions" to VCBR Director, Mr. Jason Wilson, allowing him to deprive residents of their human rights and their constitutionally protected rights.
>
> Mr. Jason Wilson, the Virginia Center for Behavioral Rehabilitation Facility Director, is responsible, per 12VAC35–115, for the custody of my and all other VCBR residents' confinement.  He is also responsible for the conditions, practice, policy, and daily operations of VCBR.  He is directly responsible for every VCBR policy's approval and enforcement.  He is also directly responsible for the fiscal budget of VCBR and allocation of VCBR funds.  He is solely responsible, per 12VAC35–115, for the humane and constitutional environment of the VCBR.
>
> Dr. Anita Schlank, VCBR Clinical Director, is directly responsible for the creation, enforcement, and operation of the VCBR sex offender treatment program.  She has direct responsibility for treatment phases, quarterly progress reports (the oversight of these in most case), program rules, privilege levels, residential services (daily operations), and program services (religious and recreational services).  In short, she is the heart of the facility that dictates how its most vital parts operate.  She is supervised only by Mr. Wilson.

(*Id.* at 57–58.)  Based on the Court's reading of the Complaint, the Court believes that Cummins sets forth the following claims:

Claim One:  (a) "The Virginia statute that regulates the classification, involuntary civil commitment, and release of sexually violent predators (Va. Code 37.2–900) is unconstitutionally vague with no clear standard/criteria set for the classification, involuntary commitment, and/or release of SVPs, nor is the burden of proof placed on the Commonwealth clear and/or specific enough;" (*id.* at 3); and,
(b) Cummins was improperly found to be an SVP, (*id.* at 9–13).

Claim Two:  "[T]he conditions at the Virginia Center for Behavioral Rehabilitation, the facility that SVPs are confined to, as well as its treatment program and operating procedures:"
(a) "are unconstitutionally restrictive and amount to a punitive environment amounting to punishment of the residents" (*id* at 3);
(b) conflict with the SVPA, (*id.* at 20); and,

4

(c) violate "residents' constitutionally protected rights to be free from bodily restraint/freedom of movement, freedom of association, freedom of expression, and the right to secure and dispose of property is being taken from residents by the defense for no legitimate state interest and/or as an exaggerated response to potential issues," (*id.* at 56).

### 2.   Requested Relief

Cummins demands the following relief:

For the Virginia Sexually Violent Predator Act [to] be brought into alignment, especially with regard to the standard used to clarify one as [a] SVP and to continue commitment and/or confinement as SVP.

For SVPs to be treated the same as other individuals committed as criminally violent – Va. Code and Va. Admin Code (12VAC35–115) allows for many constitutional and statutory right deprivations that individuals in virtually identical situations do not have to suffer.

For the VCBR treatment program to honor/uphold resident's constitutional and statutory rights.

For the VCBR treatment program, including its rules, to be related to sexually violent behavior and in response to realistic and reasonable safety concerns and realistic and reasonable concerns about maintaining [an] orderly environment at VCBR.

For the defense to correct policy and routine practice that respects and upholds residents' right to freedom of movement, freedom from bodily restraint, freedom of association/communication, freedom of privacy, right to property, right to safety (especially regarding room and housing assignment), right to choose the direction of his own life, and all other constitutional and statutory rights within reasonable and realistic limits of VCBR's environmental and ability, with good faith effort being consistently shown.

My release from VCBR without the committed label of Sexually Violent Predator and for this to include all other civilly committed SVPs who are not found to be SVP by constitutional standards.

(*Id.* at 61–62 (symbols omitted).)

### B.   Defendants' Responses

By Memorandum Order entered on December 10, 2021, the Court directed service on Defendants. (ECF No. 7.) On February 8, 2022, Defendants filed an Answer. (ECF No. 13.) By Memorandum Order entered on February 15, 2022, the Court directed that any party wishing to

file a motion for summary judgment must do so within sixty (60) days of the date of entry thereof. (ECF No. 14.)

On April 18, 2022, Defendants filed a Motion to Dismiss. (ECF No. 21.) However, a Motion to Dismiss was not procedurally permitted at that juncture because Defendants had already filed an Answer, which cut off their ability to file a Motion to Dismiss. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if responsive pleading is allowed.") By Memorandum Order entered on April 21, 2022, the Court denied the Motion to Dismiss as procedurally improper and directed that any party wishing to file a motion for summary judgment must do so within thirty (30) days of the date of entry thereof. (ECF No. 25.)

Defendants filed a Motion for Summary Judgment. Rather than being fact-specific, the majority of Defendants' arguments are legal arguments that would have been appropriately made in a motion to dismiss. Nevertheless, the Motion for Summary Judgment (ECF No. 16) will be GRANTED in part and DENIED in part.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing

6

affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

Further, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit the declaration of Defendant Wilson, (ECF No. 27–1); the declaration of Defendant Land, (ECF No. 27–2); various VCBR policy documents and forms, (ECF Nos. 27–3 through 27–6); and submissions from Cummins's Sexually Violent Predator commitment proceedings, (ECF Nos. 27–7 through 27–10). Cummins has not responded.  Nor does Cummins's Complaint constitute evidence.[2]  In light of the foregoing submissions, the following facts are established for the Motion for Summary Judgment.  The Court draws all permissible inferences in favor of Cummins.

---

[2] Cummins failed to swear to his Complaint under penalty of perjury.  Thus, his Complaint does not constitute admissible evidence.

### III.    UNDISPUTED FACTS

#### A.    SVP Proceedings

On March 15, 2013, Cummins was convicted of Object Sexual Penetration and Aggravated Sexual Battery in the Circuit Court for the County of Stafford ("Circuit Court") (ECF No. 27–7, at 3), and at some point in 2017, he finished serving his prison sentence.  Cummins was initially found to be an SVP on September 18, 2017.  (*Id.* at 2–3.)  Cummins, who was represented by counsel in those proceedings, "waived the formal presentation of the evidence for a trial" and "stipulated that he met the criteria as a sexually violent predator, and that pursuant to Virginia Code §§ 37.2–908 and 37.2–912, the appropriate disposition of the matter was for [Cummins] to be civilly committed."  (*Id.* at 2.)  In accordance with the statute[3], the Circuit Court found "by clear and convincing evidence:"

> 4.    That [Cummins] has been diagnosed with a mental abnormality and/or personality disorder within the meaning of Virginia Code § 37.2–900; and
> 5.    That because of [Cummins'] mental abnormality or personality disorder, [Cummins] finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts; therefore,
> 6.    That [Cummins'] is a sexually violent predator as defined in Virginia Code § 37.2–900.

(*Id.* at 2–3.)  The Circuit Court also found by clear and convincing evidence "that alternatives to involuntary secure inpatient treatment have been investigated and deemed unsuitable and that there is no less restrictive alternative . . . ."  (*Id.* at 3.)  Accordingly, the Circuit Court ordered that

---

[3] Section 37.2–900 of the Virginia Code defines "Sexually violent predator" as

"[A]ny person who (i) has been convicted of a sexually violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2–169.3; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts."

Va. Code. Ann. § 37.2–900 (West 2022).

Cummins "be committed to the custody of the Department of Behavioral Health and Developmental Services for appropriate treatment and confinement in a secure facility designated by the Commissioner of DBHDS." (*Id.* at 3.)

The Circuit Court conducted Cummins's first review of his civil commitment on February 26, 2019, and determined that he "remain[ed] a sexually violent predator and remain[ed] in need of inpatient, secure hospitalization; that there is no less restrictive alternative to institutional confinement and treatment; and that he continue[d] to have a high risk to re-offend if not confined to involuntary inpatient commitment and treatment." (ECF No. 27–8, at 2–3.) On April 19, 2021, the Circuit Court conducted Cummins's second review and again found him to be an SVP and ordered his ongoing commitment. (*See* ECF No. 27–9, at 2–3.) From the Court's review of the Circuit Court's docket, Cummins's 2022 review has been continued several times and is now scheduled for December 21, 2022.[4]

**B.    Defendants' Involvement**

Defendant Wilson avers that as Facility Director of the VCBR, his position is administrative, and he "oversee[s] the operations of the VCBR facility, implementation of VCBR facility policies, oversee[s] budgetary and IT-related matters for the VCBR facility, support[s] the business needs of the VCBR, and coordinate[s] services for residents." (ECF No. 27–1 ¶ 7.) Defendant Wilson does not "make determinations and/or decisions regarding the confinement or release of residents including" for Cummins. (*Id.* ¶ 9.)

---

[4] *See* http://www.courts.state.va.us/main.htm (select "Case Status and Information;" select "Circuit Court" from drop-down menu; select hyperlink for "Case Information;" select "Stafford Circuit Court" from drop-down menu and follow "Begin" button; select "Civil" button and type, "Cummins, John," and then follow "Search by Name" button; finally follow hyperlink for "CL17000620–00").

9

Defendant Wilson also supervises certain staff, including the Clinical Director, who was Defendant Schlank until she retired on April 1, 2022. (*Id.* ¶¶ 2–3, 8.) Defendant Wilson explains that Defendant Schlank "had oversight of the sex offender treatment program and was responsible for compliance with statutory standards. In that capacity, she would review residents' quarterly progress reports." (*Id.* ¶ 10.) Defendant Schlank "was not responsible for what privilege level an individual was assigned and was not responsible for determining when a resident was deemed appropriate for release." (*Id.*) Defendant Wilson explains that "while an annual review which is conducted by an expert psychologist may recommend conditional release, the committing court is not required to follow the recommendation" and "only the committing court can grant conditional release." (*Id.* ¶ 13 (emphasis omitted) (citation omitted).)

Defendant Land is the former Commissioner of the Virginia Department of Behavioral Health and Developmental Services. She held the position from December 16, 2019, until January 14, 2022. (ECF No. 27–2 ¶ 1.)[5] The "agency provides a broad array of services to the public in the areas of Developmental Health (including early intervention for infants and toddlers, housing, employment, guardianship, resources for COVID–19) and Behavioral Health (including community services board, mental health services, substance abuse services, military and veterans' services)," and the "Commissioner's position was one of governance." (*Id.* ¶ 2.) As Commissioner, Land "had no supervisory responsibilities over the individuals involved in daily provision of healthcare to those receiving services under the broad DBHDS umbrella, including those involved with mental health services." (*Id.* ¶ 5.) Land "did not control or regulate the decisions of the Facility Director or of any treaters as alleged by [Cummins]," and she was not directly responsible, as Cummins suggests, for his continued confinement and commitment. (*Id.*

---

[5] Defendant Land indicates that the new Commissioner is Nelson Smith. (ECF No. 27–2 ¶ 1.)

¶¶ 6–7.)  Land explains that although "the Commissioner is involved in the review process of individuals confined pursuant to [the SVPA], confinement and continued confinement is not a unilateral decision by the Commissioner as [Cummins] asserts."  (*Id.* ¶ 7.)

## IV.   ANALYSIS

### A.   Preliminary Matters

Cummins clearly intends to bring his claims not just on his own behalf, but on the behalf of all others committed as SVPs.  Parties may plead and conduct their own cases personally or by counsel in all courts of the United States.  *See* 28 U.S.C. § 1654.  Cummins may not bring claims on behalf of other individuals named or unnamed.  *See Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005) (explaining that "[t]he right to litigate for *oneself* . . . does not create a coordinate right to litigate for *others*" (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)).  Therefore, to the extent Cummins intends to bring this action on behalf of other similarly situated SVPs, any such claim is DISMISSED.

### B.   Claim One

#### 1.   Challenge to the SVPA

In Claim One (a), Cummins argues that "[t]he Virginia statute that regulates the classification, involuntary civil commitment, and release of sexually violent predators (Va. Code 37.2–900) is unconstitutionally vague with no clear standard/criteria set for the classification, involuntary commitment, and/or release of SVPs, nor is the burden of proof placed on the Commonwealth clear and/or specific enough."  (ECF No. 1–1, at 3.)  Defendants generally assert that they had no personal involvement in the deprivation of Cummins's constitutional rights and therefore are not liable.  With respect to Claim One, this argument is well-taken.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [demonstrate] that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions). Cummins first challenge is to the constitutionality of the statute itself. Cummins fails to demonstrate that the named Defendants had any involvement with the promulgation of the SVPA. Instead, Cummins only alleges that Defendants were involved with his care and conditions of his confinement. (*See* ECF No. 1–1, at 57–58.) For this reason alone Claim One (a) will be DISMISSED for failure to state a claim.

Second, even if Defendants were somehow personally liable, contrary to Cummins's assertions, his challenges to the SVPA lack merit. Here, Cummins contends that the SVPA "is unconstitutionally vague with no clear standard/criteria set for the classification, involuntary civil commitment, and/or release of SVPs, nor is the burden of proof placed on the Commonwealth clear and/or specific enough." (ECF No. 1–1, at 3.) Although, Cummins characterizes his claim as challenging the statute as "unconstitutionally vague," it appears that the primary focus of his claim lies in the standard of proof required to commit an individual as an SVP and to continue his detention.[6]

---

[6] Cummins contends that the SVPA is "vague" throughout his Complaint but does not truly develop a specific void for vagueness challenge. "It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289–90 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "Consistent with that approach, the [Supreme] Court has steadfastly applied the void-for-vagueness doctrine only to statutes or regulations that purport to define the lawfulness of conduct or speech." *Nyeholt v. Sec'y Veterans Affairs*, 298 F.3d 1350, 1356 (Fed. Cir. 2002) (citations omitted). Therefore, "a void-for-vagueness challenge must be directed to a statute or regulation that purports to define the lawfulness or unlawfulness of speech or conduct." *Id.* at 1357; *see Woodruff v. U.S. Dep't of Labor, Office of Workers Comp. Program*, 954 F.2d 634, 642 (11th Cir. 1992). Cummins does not identify a specific *prohibition* in the SVPA that he believes is not clearly defined. Rather, he generally argues the review process is unfair, he lacks understanding of how to be released, and that the review standard is flawed. (*See, e.g.*, ECF No. 1–1, at 3–4.) Cummins focuses on his belief that he is not really an SVP, because his diagnosis of

To the extent that Cummins believes that the SVPA is punitive and generally unfair, the SVPA and similar state statutes have been found to pass constitutional muster when faced with constitutional challenges of this nature. First, the United States Supreme Court has considered the constitutionality of civil commitment statutes similar to Virginia's SVPA at least three times and each time has upheld the constitutionality of the statute. *See Kansas v. Crane*, 534 U.S. 407, 413 (2002) (explaining that "States retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment" and finding the Kansas SVPA satisfied due process (citing *Kansas v. Hendricks*, 521 U.S. 356, 359 (1997))); *Seling v. Young*, 531 U.S. 250, 267 (2001) (explaining that the Washington SVPA, which was found to be civil by the state court, cannot be deemed punitive "as applied" to individuals); *Hendricks*, 521 U.S. at 360, 369 (1997) (holding the Kansas SVPA's confinement criteria and definitions satisfied substantive due process requirements and characterizing the confinement as civil in nature). Second, the Supreme Court of Virginia has also considered attacks on the constitutionality of the SVPA including similar burden of proof challenges raised by Cummins and has found the SVPA to be constitutional. *See Shivaee v. Commonwealth*, 613 S.E.2d 570, 576–79 (Va. 2005) (finding, *inter alia*, that the definition of sexually violent predator in the SVPA did not violate substantive due process, the Act was not void for vagueness because "the definition of sexually violent predator . . . in context of other definitions in the SVPA is not unclear," and the clear and convincing standard of proof did not violate substantive due process).

---

pedophilic disorder is incorrect or no longer current. (*See* ECF No. 1–1, at 11–13.) Cummins may not challenge the determination that he is an SVP and his ongoing detention in a § 1983 complaint.

Moreover, to the extent that Cummins argues that the definition of sexually violent predator is unconstitutionally vague, this argument lacks merit. *Shivaee v. Commonwealth*, 613 S.E.2d 570, 577 (Va. 2005) (concluding that the "the definition of sexually violent predator . . . in context of other definitions in the SVPA is not unclear").

Here, Cummins contends that the SVPA is vague, and provides "no clear standard/criteria set for the classification, involuntary commitment, and/or release of SVPs" and "is not specific enough" in its burden of proof. (ECF No. 1–1, at 3.) Cummins argues that "courts are not held to any clear, cognizable, and/or convincing standard of evidence of a person's *current* risk for sexual offense recidivism and/or the potential need for professional treatment of sexually violent behaviors." (*Id.* at 6.) The Supreme Court of Virginia has foreclosed these arguments. *See Shivaee*, 613 S.E.2d at 576–79. In *Shivaee*, the Supreme Court of Virginia explained that to survive constitutional scrutiny, "the 'clear and convincing' evidentiary standard is the minimum standard that may be used in a civil commitment proceeding." *Id.* at 126 (citing *Addington v. Texas*, 441 U.S. 418, 423–33 (1979)). Examining the language of the SVPA,[7] the Supreme Court of Virginia explained that "the General Assembly adopted the clear and convincing evidentiary standard" and "[i]t is settled this standard meets the demands of due process." *Id.* (citing *Addison*, 441 U.S. at 432–33). The court concluded that, "the use of the clear and convincing evidentiary standard for the purposes of the SVPA satisfies constitutional requirements of due process." *Id.* Accordingly, Cummins's challenges to the SVPA on the basis that its evidentiary standard to classify, commit, and release SVPs is insufficient or unclear, lacks merit.

To the extent that Cummins intends to challenge generally the procedures required to commit an individual as an SVP, the Supreme Court of Virginia has also reviewed the procedural and evidentiary requirements of the SVPA, and in each instance held that the requirements survived constitutional scrutiny. *See Townes v. Commonwealth*, 609 S.E.2d 1, 4 (2005)

---

[7] The SVPA provides that: "The court or jury shall determine whether, by clear and convincing evidence, the respondent is a sexually violent predator." Va. Code Ann. § 37.2–908(C) (West 2022). With regard to the yearly or biennial review hearings, the standard remains the same: "The burden of proof at the hearing shall be upon the Commonwealth to prove to the court by clear and convincing evidence that the respondent remains a sexually violent predator." Va. Code Ann. § 37.2–910(C).

(explaining that SVPA's definitions must be "strictly construed" to comport with due process); *McCloud v. Commonwealth*, 609 S.E.2d 16, 21–23 (2005) (reviewing in detail "the procedures of the SVPA as well as the standards to be applied in the trial court in considering whether to commit a person determined to be a sexually violent predator" because of "the potential loss of a prisoner's liberty" and finding they satisfied due process); *Commonwealth v. Allen*, 609 S.E.2d 4, 12–13 (2005) (explaining that to satisfy due process, the Commonwealth must demonstrate "clear and convincing evidence" that an individual is an SVP under the SVPA).

Similarly, federal courts in Virginia have consistently held that the SVPA comports with due process. *See Brown v. United States*, No. 7:21–cv–00026, No. 7:21–cv–00031, 2021 WL 262053, at *3–4 (W.D. Va. Jan. 26, 2021) (holding that the SVPA and "its definitions and proof requirements" passed constitutional muster (citing *Crane*, 534 U.S. at 409, 412–13; *Shivaee*, 613 S.E.2d at 576–77)); *Lopez-Flores v. Clarke*, No. 3:18CV83–HEH, 2019 WL 982854, at *4 n.2 (E.D. Va. Feb. 28, 2019) (explaining that the term "sexually violent predator" is not unconstitutionally vague (citing *Shivaee*, 613 S.E.2d at 577)); *Turner v. Herrick*, No. 1:10cv781 (CMH/JFA), 2011 WL 3320820 (E.D. Va. July 29, 2011), *aff'd* 465 F. App'x 250 (4th Cir. 2012) (holding the SVPA satisfies the elements set forth by the Supreme Court for a civil commitment statute to survive due process challenge (citing *Crane*, 534 U.S. at 409, 412–13; *Shivaee*, 613 S.E.2d at 576)).

In sum, Cummins fails to demonstrate that the SVPA lacks clear evidentiary standards to classify, commit, and release SVPs.  Accordingly, in the alternative, Claim One (a) will also be DISMISSED for lack of merit.

## 2.     Challenge to Detention as an SVP

In Claim One (b), Cummins argues that he was improperly found to be an SVP. (ECF No. 1–1, at 9–13.) Cummins's argument fails at the outset because this is not a claim Cummins may bring by way of § 1983.[8]  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court emphasized that civil tort actions are "not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486.  The Supreme Court then held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87 (internal footnote omitted).

In *Edwards v. Balisok*, the Supreme Court extended *Heck* to civil rights actions that do not directly challenge confinement, but instead contest procedures which necessarily imply unlawful confinement. *See* 520 U.S. 641, 646 (1997).  The Supreme Court has explained that *Heck* and its progeny teach that:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success

---

[8] The Court reaches this conclusion under its screening obligations pursuant to the Prison Litigation Reform Act ("PLRA").  This Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.  The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

In the alternative, and as Defendants also argue, Defendants were not personally involved in the deprivation of Cummins's rights with regard to the finding that Cummins was an SVP.  Rather, that was a determination vested solely in the Circuit Court.  Thus, Cummins fails to state a claim for relief against Defendants.

> in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). *Heck* bars Cummins's claim that is predicated on his assertion that his civil detention is improper because he is not an SVP. *See id.* at 79 ("a § 1983 action will not lie when a state prisoner challenges 'the fact or duration of his confinement'") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Although *Heck* only expressly addressed challenges to criminal convictions and sentences, its standards are applicable to Cummins's claim challenging his civil detention. *See Huff v. Attorney Gen. of Va.*, No. 3:07cv744, 2008 WL 4065544, at *5 (E.D. Va. Aug. 26, 2008) (citing *Wood v. Wood El*, No. Civ.A. 05–1447 RBK, 2005 WL 1899335, at *4 (D.N.J. Aug. 5, 2005); *Delaney v. Comm'r of Dep't of Mental Health*, No. C.A. 92–12025–MLW, C.A. 92–12026–MLW, 1998 WL 113852, at *5 n.3 (D. Mass. Mar. 5, 1998)).

Here, granting Cummins relief based on his current civil detention would necessarily invalidate that detention. *Wilkinson*, 544 U.S. at 81–82. Cummins also fails to present any evidence that a court or tribunal has invalidated his current civil detention. *Heck*, 512 U.S. at 486-87. Rather, Cummins filed a federal habeas petition challenging his civil detention that was denied on March 21, 2022. *See Cummins v. Land*, No. 3:21cv555, 2022 WL 986008, at *1–2 (E.D. Va. Mar. 31, 2022) (holding that Cummins's § 2254 petition was unexhausted and dismissing the action without prejudice). Because Cummins's challenge under § 1983 to his civil detention as an SVP is improper, Claim One (b) will be DISMISSED as frivolous and for failure to state a claim.

### C.    Claim Two

In Claim Two, Cummins contends that the "the conditions at the Virginia Center for Behavioral Rehabilitation, the facility that SVPs are confined to, as well as its treatment program and operating procedures" (a) "are unconstitutionally restrictive and amount to a punitive

environment amounting to punishment of the residents," (ECF No. 1–1, at 3); (b) conflict with the SVPA, (*id.* at 20); and, (c) violate "residents' constitutionally protected rights to be free from bodily restraint/freedom of movement, freedom of association, freedom of expression, and the right to secure and dispose of property is being taken from residents by the defense for no legitimate state interest and/or an exaggerated response to potential issues," (*id.* at 56). Although the Court has done its best to isolate specific subparts of Claim Two, it has done so solely for the purposes of this Opinion. Therefore, at this juncture, the Court is not inclined to, nor finds it appropriate to, engage in an extensive analysis of Claim Two. Instead, the Court will direct Cummins to provide a more concise statement of his claim through a particularized complaint. However, the Court first addresses several of Defendants' arguments.

Defendants, in essence, argue that they are not personally involved in Cummins's conditions of his confinement, and the claims against them should be dismissed. The Court is not so persuaded based on the record. Rather, Defendant Wilson admits that he "oversee[s] the operations of the VCBR facility, implement[s] . . . VCBR facility policies, . . . and coordinate[s] services for residents." (ECF No. 27–1 ¶ 7.) Defendant Schlank "had oversight of the sex offender treatment program and was responsible for compliance with statutory standards." (*Id.* ¶ 10.) Therefore, the Court fails to discern on the record before it how Defendants Schlank and Wilson would not be personally involved in Cummins's conditions of confinement. Finally, Defendant Land indicates that she "had no supervisory responsibilities over the individuals involved in daily provision of healthcare to those receiving services under the broad DBHDS umbrella, including those receiving mental health services;" that she "did not control or regulate the decisions of the Facility Director or of any treaters as alleged by [Cummins];" and she was not directly responsible, as Cummins suggests, for his continued confinement. (*Id.* 27–2 ¶¶ 5–7.) While Defendant Land

18

may not be involved in the day-to-day operations of the VCBR, she fails to demonstrate that she was not responsible for the operating procedures and rules to which Cummins was subject during his confinement.

In Claim Two (a), Cummins contends the conditions that he is subjected to in the VCBR are punitive and amount to punishment; and in Claim Two (b), he argues that his conditions of confinement conflict with the SVPA, and in essence, conflict with the SVPA's treatment purpose. (ECF No. 1–1, at 20.) Thus, it appears that Cummins is arguing that the SVPA is punitive "as applied" to him, and that Defendants are violating state law in their policies. Defendants assert that because the Supreme Court of Virginia has found the SVPA to be civil, not punitive in nature, that is the end of the inquiry with respect to Cummins's conditions of confinement claims. (ECF No. 27, at 19–20.) Defendants, however, fail to direct the Court to any persuasive authority for this position. At this juncture, the Court is not persuaded by Defendants' terse argument.[9]

In Claim Two (c), Cummins vaguely suggests that the "the conditions at the Virginia Center for Behavioral Rehabilitation, the facility that SVPs are confined to, as well as its treatment program and operating procedures," (ECF No. 1–1, at 3), violate "residents' constitutionally protected rights to be free from bodily restraint/freedom of movement, freedom of association, freedom of expression, and the right to secure and dispose of property is being taken from residents by the defense for no legitimate state interest and/or an exaggerated response to potential issues." (*Id.* at 56.) Cummins provides a lengthy list of complaints, (ECF No. 1–1, at 44–60), but he never explains specifically how the named Defendants have violated his constitutional rights with respect to these conditions, rules, and procedures. As such, Cummins's fails to provide the Defendants

---

[9] The Court recognizes that as-applied challenges to sexually violent predator statutes have been foreclosed by the Supreme Court, *see Seling*, 531 U.S. at 262–67, and that state law violations do not raise a claim of constitutional dimension. However, Defendants have not sufficiently briefed these issues.

19

with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Given the deficiencies identified, the Motion for Summary Judgment with respect to Claim Two will be DENIED WITHOUT PREJUDICE.

## V.   NEXT STEPS

Courts must liberally construe *pro se* civil rights complaints in order to address constitutional deprivations. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). As identified above, with respect to Claim Two, Cummins fails to articulate clearly how each Defendant violated his constitutional rights. Nevertheless, the Court notes that Cummins did not respond to the Motion for Summary Judgment and has not been in contact with the Court since February 2022. Therefore, it appears that Cummins is no longer interested in litigating this matter. Accordingly, if Cummins wishes to continue to litigate Claim Two, he must provide a more concise statement of his claim.

Cummins is warned that the Court will not engage in the tedious task of extracting claims from a voluminous document a second time. Therefore, within thirty (30) days of the date of entry hereof, Cummins must particularize his complaint with respect to Claim Two in conformance with the following directions and in the order set forth below:

> a.   At the very top of the particularized pleading, Cummins is directed to place the following caption in all capital letters "PARTICULARIZED VERSION OF CLAIM TWO FOR CIVIL ACTION NUMBER 3:21CV556."

> b.   The first page of the particularized pleading must contain a concise statement of his claim for relief and must specifically identify any subpart. Thereafter, in the body of the particularized pleading, Cummins must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Cummins must be concise and he should not include anything other than the facts required to support each claim. Thereafter, in

separately captioned sections, Cummins must clearly identify each civil right violated, meaning the specific federal law or amendment. Under each section, the Cummins must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. Cummins shall also include a prayer for relief.

      c.     The Court will not consider Cummins original complaint. Therefore, the particularized pleading must stand or fall of its own accord and raise all aspects of Claim Two that Cummins wishes the Court to consider. Cummins may not reference statements in the prior complaints. Plaintiff may not reallege any part of Claim One as it is dismissed with prejudice by this Memorandum Opinion.

      d.     The particularized pleading may not exceed twenty-five (25) pages in length.

**FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b).

## VI.    CONCLUSION

The Motion for Summary Judgment, (ECF No. 26), will be GRANTED in part and DENIED in part. Claim One will be DISMISSED. If Cummins desires to continue to litigate this action, he must file a particularized pleading with respect to Claim Two that conforms with the Court's directions within thirty (30) days of the date of entry hereof. Failure to file the particularized pleading in a timely manner will result in the dismissal the action. *See* Fed. R. Civ. P. 41(b).

An appropriate Order shall accompany this Memorandum Opinion.

Date: 8 December 2022
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge